UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHRYN KING,<br>    Plaintiff | )<br>)<br>) |
| v. | )     Civil Case No. 3:19-cv-30018-MGM |
| | ) |
| KEVIN DEMING and SAFECO<br>INSURANCE, A LIBERTY MUTUAL,<br>COMPANY<br>    Defendants. | )<br>)<br>)<br>) |

MEMORANDUM AND ORDER REGARDING
DEFENDANT KEVIN DEMING'S MOTION TO COMPEL THE
INDEPENDENT EXAMINATIONS OF PLAINTIFF KATHRYN KING
(Docket No. 58)

ROBERTSON, U.S.M.J.

Kathryn King ("Plaintiff"), the passenger in a car involved in an accident, brings this action against Kevin Deming ("Deming"), the driver, and his insurer, Safeco Insurance. In the second amended complaint, Plaintiff alleges that she sustained a closed head injury as a result of Deming's negligent driving (Dkt. No. 35). Deming has moved to compel two independent examinations of Plaintiff pursuant to Fed. R. Civ. P. 35(a) (Dkt. No. 58) ("Defendant's Motion"). For the reasons set forth below, Defendant's Motion is ALLOWED in part and DENIED in part.

I.     Background

According to the operative complaint, Deming lost control of his car and collided with another vehicle in Suffield, Connecticut on June 4, 2017 while Plaintiff was a front-seat passenger (Dkt. No. 35, Second Am. Compl., ¶¶ 1, 7-9). Plaintiff suffered a concussion and was diagnosed with post-concussion syndrome (Second Am. Compl., ¶ 13). After the accident,

Plaintiff was hospitalized on three occasions between October 2017 and January 2018 for anxiety, depression, suicide risk, and alcohol and drug abuse (Second Am. Compl. ¶ 15).

On October 9, 2018, Plaintiff underwent a neuropsychological assessment performed by Zachary Marowitz, Ph.D.  Dr. Marowitz's findings were consistent with a mild neurocognitive disorder secondary to mild traumatic brain injury that was complicated by sleep disturbance, depression, and anxiety.  Based on Plaintiff's observed behaviors during the interview and testing day, Dr. Marowitz further thought it was reasonable to conclude that Plaintiff had an acquired deficit hyperactivity disorder (Second Am. Compl., ¶¶ 22-23).  Plaintiff has designated economist Craig Moore, Ph.D., as an expert.  He has tendered an expert report assessing Plaintiff's potential lost earnings capacity as exceeding $1.8 million (Dkt. No. 67 at 3).

Deming has moved to compel two independent examinations of Plaintiff under Fed. R. Civ. P. 35(a) ("Rule 35") the first by neuropsychologist Karen Postal, Ph.D., and the second by vocational rehabilitation expert Nancy Segreve, MA, CRC, CC.  Plaintiff opposes Defendant's Motion on the grounds that the motion is untimely and that the defendants should be required to rely on the evaluation conducted by Dr. Marowitz (Dkt. No. 61 at 2-3).

II.     Analysis

A.  Applicable Legal Principles

Rule 35 provides that a court "may order a party whose mental of physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner."  Fed. R. Civ. P. 35(a)(1).  Rule 35 provides for a two-part test.  "The moving party must make an affirmative showing that the condition is genuinely in controversy and that good cause exists for ordering a particular examination." *Sacramona v. Bridgestone/Firestone, Inc.,* 152 F.R.D. 428, 431 (D. Mass.1993) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 111

(1964); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986)). "The pleadings alone are sufficient to satisfy that burden when a plaintiff in a negligence action asserts mental or physical injury." *Cabana v. Forcier*, 200 F.R.D. 9, 12 (D. Mass. 2001) (citing *Schlagenhauf*, 379 U.S. at 119; *Cody v. Marriott Corp.,* 103 F.R.D. 421, 422 (D. Mass. 1984)). "'Good cause for a mental examination requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case.'" *Moore v. City & County of San Francisco*, Case No. 18-cv-00634-SI, 2019 WL 955286, at *1 (N.D. Cal. Feb. 27, 2019) (quoting *Ragge v. MCA/Universal Studios*, 165 F.R.D 605, 608 (C.D. Cal. 1995)). "It is within the broad discretion of the district court to determine whether a party must submit to examination." *Id.* (citing *Shirsat v. Mut. Pharm. Co., Inc.*, 169 F.R.D. 68, 70 (E.D. Pa. 1996)).

    B. <u>Deming's Proposed Examinations</u>

    1. Examination by Karen Postal, Ph.D.

Plaintiff does not seriously dispute that, as the defendants contend, her second amended complaint squarely places her physical and mental condition in controversy (Dkt. No. 61). Plaintiff's contention that the defendants should be required to rely on her medical and related records and the results of the tests administered by Dr. Marowitz is unpersuasive. First, by an affidavit signed by Dr. Postal, who is a neuropsychologist, Deming has identified information lacking in the evaluation performed by Dr. Marowitz. Dr. Postal avers that Dr. Marowitz did not administer performance validity tests ("PVTs") when he tested Plaintiff. PVTS are designed to ensure that the evaluator can assess whether the test subject is answering questions to the best of her ability. According to Dr. Postal, because Dr. Marowitz did not administer PVTs when he tested Plaintiff, the date he obtained cannot be relied on as valid (Dkt. No. 67-1, ¶ 4). Deming has thus shown that an examination by Dr. Postal will not be redundant of Dr. Marowitz's

testing. *See, e.g., Shawler v. Ergon Asphalt & Emulsions, Inc.*, CIVIL ACTION NO: 15-2599, 2016 WL 9412671, at *2-3 (E.D. La. Feb. 11, 2016). Second, "given that [P]laintiff claims [s]he has suffered from a closed-head injury, (2) cla[i]ms impairments that may be of a neuropsychological nature (including memory loss, anxiety, and depression), and (3) is seeking [more than] a million dollars in damages, the court is loath to deny [Deming] the tool [his] attorneys believe is necessary to mount a proper defense." *Ussatis v. Bail*, No. 1-18-cv-62, 2019 WL 2250268, at *1 (D. N. D. May 24, 2019); *see also Shawler*, 2016 WL 9412671, at *3. To the extent Plaintiff argues that the request comes too late, Deming did not unduly delay the filing of this motion, which was prompted by Plaintiff's designation of Dr. Moore as an expert and the production of his report containing an estimate of the extent of Plaintiff's alleged losses. Further, because of the pandemic and the resulting constraints on the court's trial schedule, there will be adequate time for Dr. Postal to conduct her testing and produce a report and for Plaintiff to take any steps she deems necessary in response to the report. Accordingly, the court will grant so much of Defendant's Motion as seeks an order requiring Plaintiff to undergo an independent medical examination conducted by Dr. Postal.

    2. Examination by Nancy Segreve

> Rule 35 does not explicitly include examinations by vocational experts but some courts have permitted examinations by vocational rehabilitation experts who are licensed or certified. *See Jeffreys v. LRP Pub[l'n]s, Inc.*, 184 F.R.D. 262 (E.D. Pa. 1999); *Fischer v. Coastal Towing Inc.*, 168 F.R.D. 199 (E.D. Tex. 1996); and *Olcott v. LaFiandra*, 793 F. Supp. 487 (D. Vt. 1992). Other courts have taken the view that the 1991 Advisory Committee's Notes to Rule 35 have extended the scope of *examiners* covered but not the scope of *examinations* covered and have declined to order a vocational assessment unconnected to any physical or mental examinations. *Storms v. Lowe's Home [Ctrs.]*, nc*., 211 F.R.D. 296, 298 (W.D. Va. 2002).*

*Yarosevich v. Toyota Indus. Corp.*, Civil No. 05-cv-182-JD, 2008 WL 2329331 (D.N.H. June 5, 2008). Deming asserts he is entitled to an examination by a vocational expert because no

4

vocational testing has been conducted and no report produced concerning Plaintiff's vocational capabilities and prospects. According to Deming, Ms. Segreve's testing "would last approximately two to three hours and would include a diagnostic vocational interview." If Dr. Postal conducts an examination, Ms. Segreve would not need to conduct any other testing of Plaintiff (Dkt. No. 58-1 at 3). Ms. Segreve states that her diagnostic vocational interview "would include a review of Plaintiff's past work, educational history, medical status, and psychosocial data as well as inquiry into her perception of her functional capacities and activities of daily living" (Dkt. No. 67-3, ¶ 2).

Any compelled examination is intrusive. There is a split decisional law as to whether Rule 35, which only authorizes "a physical or mental examination," Fed. R. Civ. P. 35(a)(1), authorizes the court to order a party to submit to a vocational examination. Assuming that the defense attorneys have done their job in discovery, "[d]efendant's expert has multiple other sources of discovery from which to draw conclusions about [P]laintiff's ability to work during the relevant time. In addition to [P]laintiff's deposition, defendant's expert has access to nearly all of [P]laintiff's medical records, [P]laintiff's answers to interrogatories, … [P]laintiff's complete Social Security Administration file[,]" and the results of extensive testing by Drs. Marowitz and Postal. *Hubbard v. Tyco Integrated Cable Sys., Inc.*, Civil No. 10-cv-365-LM, 2013 WL 1558695, at *2 (D.N.H. Apr. 12, 2013); *see also Yarosevich*, 2008 WL 2329331, at *2. This court finds the reasoning in the *Hubbard and Yarosevich* decisions persuasive and, in the exercise of its discretion, denies so much of Defendant's Motion as seeks an order compelling Plaintiff to submit to a vocational examination by Ms. Segreve on the grounds that Deming has not shown good cause for such an examination.

    3.   Conditions of examination

In the event Defendant's Motion is allowed, Plaintiff requests that the examining expert be tested for COVID-19 not more than 48 hours in advance of the examination, that Plaintiff's father be allowed to attend and provide information to the examining expert, and that Deming be ordered to pay for travel (by limosine), meals, and any other associated costs (Dkt. No. 61 at 3-4). Mr. Deming and Dr. Postal do not object to the presence of Plaintiff's father during the interview portion of the session as long as he remains quiet, does not interfere or participate, and does not sit at the table. Deming and Dr. Postal object to his presence for the testing portion of the examination (Dkt. No. 67 at 4).

"[T]he clear majority of federal courts have refused to permit third party observers at Rule 35 examinations." *Cabana*, 200 F.R.D. at 12 (collecting cases). The reasons for excluding third parties have been summarized as follows:

> 1) the special nature of the psychiatric examinations requires direct and unimpeded one-on-one communication without external interference or intrusion; 2) in contrast to depositions and other forms of discovery, Rule 35 expert examinations are not intended to be adversarial; 3) fairness dictates that if defense counsel cannot be present when a plaintiff is interviewed by a[n expert] who will testify at trial on [her] behalf, then plaintiff's counsel [or family member] cannot be present when plaintiff is examined by defendant's expert … ; and 4) any concerns with distortions or inaccuracies by the examining [expert] can be addressed through traditional methods of impeachment and cross-examination.

*Baba-Ali v. City of N.Y.*, No. 92CIV.7957(DAB)(THK), 1995 WL 753904, at *3 (S.D.N.Y. Dec. 19, 1995). Because Deming and Dr. Postal do not oppose Plaintiff's father being present in the interview portion of the examination, he may attend this portion of the examination on the conditions set out by Dr. Postal. To be clear, Plaintiff's father may not sit at the table, and he may not speak, intervene, or seek to provide any information during Dr. Postal's interview of Plaintiff. Plaintiff's father may not be present while Dr. Postal administers the testing portion of the examination. As to the remaining conditions, Defendant will reimburse Plaintiff at the

federal mileage rate and provide up to $15 for two meals for Plaintiff on the day of the examination. To address the risks caused by COVID-19, the parties should negotiate suitable conditions for the examination that comply with CDC recommendations.

III. Conclusion

For the above-stated reasons, Defendant's motion to compel (Dkt. No. 58) is ALLOWED in part and DENIED in part.

It is so ordered.

Dated: July 30, 2020                                  /s/ Katherine A. Robertson
                                                      KATHERINE A. ROBERTSON
                                                      United States Magistrate Judge